IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SANDRA ZARICHNY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMPLETE PAYMENT | : | NO. 14-3197 |
| RECOVERY SERVICES, INC et al. | : | |

MEMORANDUM

Dalzell, J.                                                                          January 21, 2015

Defendants Complete Payment Recovery Services, Inc. and Fidelity National Information Services (collectively, "the defendants") move to dismiss Sandra Zarichny's first amended complaint and strike the putative class action claims she brings under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227 et seq.

Plaintiff seeks to bring this putative class action on behalf of herself and two classes of similarly situated individuals pursuant to Fed. R.Civ. P. 23.  She proposes to represent a nationwide class of people "who received one or more telephone calls from [d]efendants to whom [d]efendants did not send a written notice pursuant to 15 U.S.C. § 1692g,"[1] whom she

_____

[1] Section 1692g(a) provides that

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

refers to as "the FDCPA class."  First Amended Complaint ("FAC") at ¶ 16.  She also seeks to bring this action on behalf of those people "who received one or more telephone calls from [d]efendants on the individual's cellular telephone that was initiated using an automatic telephone dialing system" without prior consent, which she styles as "the TCPA class."  Id. at ¶ 17[2].

We have federal question jurisdiction pursuant to 28 U.S.C. § 1331.

For the reasons detailed below, we will grant defendants' motion in part and deny it in part.

## I.      Legal Standard

### A.      Motion To Dismiss

A defendant moving to dismiss under Fed. R. Civ. P. 12(b)(6) bears the burden of proving that a plaintiff has failed to state a claim for relief, see Fed. R. Civ. P. 12(b)(6); see also, e.g., Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  A Rule 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint and "[t]he question, then, is whether the facts alleged in the complaint, even if true, fail to support the claim."  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (internal citation and quotation marks omitted).  As the Supreme

---

> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

[2] In neither instance does plaintiff specify under what subsection of Rule 23(b) she seeks to champion those putative classes.

Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), and <u>Ashcroft v. Iqbal</u>, 556

U.S. 662 (2009), in order to survive a Rule 12(b)(6) motion "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'," <u>Iqbal</u>, 556

U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 570). A claim is plausible "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged," <u>Iqbal</u>, 556 U.S. at 678.

Our Court of Appeals requires district courts considering a motion to dismiss under Fed.

R. Civ. P. 12(b)(6) to engage in a two-part analysis:

> First, the factual and legal elements of a claim should be separated.
> The district court must accept all of the complaint's well-pleaded
> facts as true, but may disregard any legal conclusions. Second, a
> district court must then determine whether the facts alleged in the
> complaint are sufficient to show that the plaintiff has a 'plausible
> claim for relief.'

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009).

In deciding a motion to dismiss, all well-pleaded allegations of the complaint must be

taken as true and interpreted in the light most favorable to the plaintiff, and all inferences must

be drawn in her favor, <u>see</u> <u>McTernan v. City of York, PA</u>, 577 F.3d 521, 526 (3d Cir. 2009)

(internal quotation marks omitted). To survive a motion to dismiss, a plaintiff must allege facts

that "raise a right to relief above the speculative level on the assumption that the allegations in

the complaint are true (even if doubtful in fact)." <u>Victaulic Co. v. Tieman</u>. 499 F.3d 227, 234

(3d Cir. 2007) (quoting <u>Twombly</u>, 550 U.S. at 555).

### B. Motion To Strike

Rule 12(f) provides in pertinent part that we may strike from a pleading "an insufficient

defense or any redundant, immaterial, impertinent, or scandalous matter" on motion by either

party "within 21 days after being served with the pleading." See Fed.R.Civ.P. 12(f).

In general, federal courts disfavor motions to strike an opponent's pleading under Fed. R. Civ. P. 12(f) because this drastic remedy "often is sought by the movant simply as a dilatory or harassing tactic." 5C Charles Alan Wright and Arthur R. Miller, Federal Practice & Procedure, §1380 (3d ed. 2014). A court possesses "considerable discretion in disposing of a Rule 12(f) motion to strike." Id. at §1382.

As a result, courts usually deny such motions "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." River Road Devel. Corp. v. Carlson Corp.-Northeast, 1990 WL 69085 at *3 (E.D.Pa. May 23, 1990) (VanArtsdalen, J.). That is because the purpose of a motion to strike is "to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." Synthes, Inc. v. Emerge Medical, Inc., 2012 WL 4473228 at *3 (E.D.Pa. Sept. 28, 2012) (internal citation omitted) (Buckwalter, J.).

In a putative class action case like this one, a plaintiff may generally conduct discovery relevant to the Rule 23 class certification requirements and a court should, therefore, only grant a motion to strike class allegations if class treatment is evidently inappropriate from the face of the complaint.[3] See Landsman & Funk PC v. Skinder-Strauss Assocs., 640 F.3d 72, 93 n. 30 (3d Cir. 2011) (the court may determine class certification before discovery when the "complaint itself demonstrates that the requirements for maintaining a class action cannot be met"); accord John v. Nat'l Sec. Fire and Cas. Co., 501 F.3d 443, 445 (5th Cir. 2007). As our sister court explained, "It is only when no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23, that a motion to strike class allegations should be

---

[3] Plaintiff's class action allegations are found in ¶¶ 15 through 25 of the FAC.

granted." McPeak v. S-L Distribution Co., Inc., 2014 WL 4388562 at *4 (D.N.J. Sept. 5, 2014)

(citing with approval Pilgrim v. Universal Health Card, LLC, 660 F.3d 943, 949 (6th Cir. 2011)).

Otherwise, an early motion to strike should be denied.  "If the viability of a class depends on

factual matters that must be developed through discovery, a motion to strike will be denied

pending the full-blown certification motion."  McPeak, 2014 WL 4388562 at *4 (quoting 1

Joseph M. McLaughlin, McLaughlin on Class Actions § 3.4 (7th ed. 2010)).

## II.    Factual Background

Plaintiff alleges that she is a college student[4] who has on occasion rented course books

from her college.  FAC ¶¶ 53-54.  According to her complaint, over a six-month period in 2013,

she received eleven phone calls on her cell phone from (800) 873-5869, a number unknown to

her that "appear[ed] to have been initiated by an automatic telephone dialing system."  Id. at ¶

56.  She received phone calls on:

-- Thursday, June 13, 2013 at 7:20 p.m.;

-- Friday, June 21, 2013 at 10:04 a.m.;

-- Wednesday, June 26, 2013 at 1:37 p.m.;

-- Saturday, June 29, 2013 at 2:50 p.m.;

-- Friday, July 5, 2013 at an unspecified time;

-- Monday, July 15, 2013 at 4:06 p.m.;

-- Wednesday, October 9, 2013 at 8:58 a.m.;

-- Wednesday, October 16, 2013 at 9:20 a.m.;

-- Thursday, November 7, 2013 at 8:36 a.m.;

---

[4] Plaintiff omits from her original complaint and first amended complaint the uncontested fact
that she is employed as an administrative assistant by the lead counsel of record in this matter.
See Resp. in Opp. at 8.

-- Monday, November 18, 2013 at 10:21 a.m.; and

-- Saturday, November 23, 2013 at 12:38 p.m.

Id. at ¶¶ 57-60, 64, 71, and 73.

Zarichny asserts that she had no debt at that time.  Id. at ¶ 62.  Nonetheless, she alleges

each call referred to an unknown debt in a pre-recorded message.  Id. at ¶ 61.  As to the July 5,

2013 phone call, Zarichny alleges the caller left a pre-recorded message which stated:

> Hello! This message is for Sandra Zarichny.  If you are not this
> person, please either hang up or call us at 1 (866) 838-6102 to
> remove your phone number.  If you are this person, please
> continue to listen to this message.
>
> This is an attempt to collect a debt and any information obtained
> will be used for that purpose.  Please call Complete Payment
> Recovery Services at 1 (800) 873-5869.  Again, please call
> Complete Payment Recovery Systems at 1 (800) 873-5869.  Thank
> you for returning our call.

Id. at ¶ 64.  Zarichny alleges that she was certain she had no debt, but, because the recorded call

did not instruct her on how to remove her number from the call list, she "felt that, by calling the

provided phone number, she would be acknowledging that she owed the debt" referred to in the

voice mail.  Id. at ¶¶ 66-68.  She did not call defendant Complete Payment Recovery Services.

Id. at ¶ 69.

Following the November 23, 2013 phone call, Zarichny called the 800 number to inquire

why she was receiving these calls.  Id. at ¶ 76.  An unidentified female informed her that she

owed money for two textbooks she had rented but not returned.  Id. at ¶ 77.  Zarichny disputes

that she owed money "because she specifically remembered returning all of her 'rented' course

books," and contends no debt ever existed and she was never in default.  Id. at ¶¶ 78-79.  She

alleges she received no information from the defendants about the alleged debt in violation of the

FDCPA, id. at ¶¶ 82, 93, and 94, and that defendants placed calls at unusual times known to be

inconvenient to her "repeatedly or continuously with [the] intent to annoy, abuse, or harass" her in violation of Section 1692d of the FDCPA.  Id. at ¶ 90.

Zarichny alleges that Complete Payment Recovery Services, or "CPRS", is a wholly-owned subsidiary of Fidelity National Information Services, or "FIS".  Id. at ¶ 36.  She alleges both defendants acted as "debt collectors."  Id. at ¶¶ 49-52.

As to FIS, Zarichny alleges as follows:

-- FIS offers debt collection services, in part through a call center in Northport, Alabama, that handles debt collections for financial institutions and queries from customers with credit cards, debit cards and other banking-related services, id. at ¶¶ 27, 28;

-- FIS advertises to hire for "Collections Associate" and "Customer Service Associate 1" positions, id. at ¶ 29;

-- FIS's annual report describes its ability to "facilitate the collection of state income taxes, real estate taxes, utility bills, vehicle registration fees, driver's license renewal fees, parking tickets, traffic citations, tuition payments, court fees and fines, hunting and fishing license fees, as well as various business licenses," id. at ¶ 30;

-- These lines of business, as well as its collection on dishonored checks, bring FIS within the purview of the FDCPA, which it acknowledged in its 2011, 2012 and 2013 annual reports, id. at ¶¶ 31-35.

Zarichny alleges that FIS exerts "full supervisory authority over CPRS, is intimately involved with the practices and procedures of CPRS, and, in fact, developed and implemented the particular collection practices used by CPRS."  Id. at ¶ 38.  For example, according to the first amended complaint CPRS does not have its own Web site but instead uses http://www.fisglobal.com/ to market and advertise its services.  Id. at ¶ 40.  Also, the complaint

alleges, FIS operates CPRS's portal for consumer payments -- www.paymentpost.com.  Id. at ¶
41.  Zarichny further alleges that FIS employees staff CPRS as "corporate officers and executive
personnel," who prepare and implement debt-collection strategies.  Id. at ¶¶ 43, 44.  She offers as
examples a state filing and bar association Web site in Florida that identify two individuals as
CPRS officers, when -- Zarichny contends -- both are allegedly FIS employees.  Id. at ¶¶ 45-48.

Zarichny also alleges that FIS describes CPRS as a "fully licensed and letter-compliant
debt collection company in all 50 states," which can "collect any debt, in any capacity and on
any platform."  Id. at ¶¶ 36-37.

## III.    Discussion

Defendants move to strike Zarichny's class action allegations and dismiss all claims
asserted under the TCPA and FDCPA.  MTD at 1.  They offer two reasons that Zarichny's
allegations against FIS must be dismissed in their entirety.  First, they contend that she failed to
allege that FIS placed any calls to her as the TCPA requires or acted as a debt collector as the
FDCPA defines that role.  Id. at 16-18.  Second, they argue that CPRS's acts may not be imputed
to its parent company because Zarichny has failed to allege that FIS dominates CPRS, or that
CPRS is either an instrumentality of FIS or a sham corporation.  Id. at 19-24.

Next, as to plaintiff's TCPA claim against CPRS, the defendants contend it should be
dismissed because the statute prohibits only calls made without the recipient's "prior express
consent," 47 U.S.C. § 227(b)(1)(A)(iii), and Zarichny's complaint is silent as to her consent.
MTD at 24-26.  They also argue that Zarichny alleges CPRS placed only one of the eleven phone
calls, and therefore her action should be dismissed as to the other ten.  Id. at 26-27.

Defendants maintain that Zarichny's FDCPA claim against CPRS includes only rote
recitals of the statute's subparts and must therefore also be dismissed.  Id. at 29-37.

Finally, defendants urge us to strike plaintiff's putative class allegations because her class definitions as to both statutes create a so-called fail-safe class that impermissibly determines membership based upon a finding of liability.  Id. at 9-12.  They also contend that Zarichny is an inadequate class representative because she is an employee of one of the law firms representing her and the putative classes.  Id. at 12-14.

Separately, they seek leave to file a reply brief.  Reply Br. at 1.

A.    Zarichny's claims against FIS

We turn first to plaintiff's claims against FIS, CPRS's parent company.

Defendants argue that all claims against FIS must be dismissed because Zarichny did not allege that it "ma[d]e a call . . . using any automatic telephone dialing system" in violation of the TCPA.  See 47 U.S.C. § 227(b)(1)(A)(iii); see also MTD at 16-17.  As to the FDCPA, defendants maintain that Zarichny does not sufficiently allege that FIS is a "debt collector" within the meaning of that statute, 15 U.S.C. § 1692a(6),[5] and, even had she, they contend that she has failed to allege that FIS itself engaged in any alleged debt-collection activity.  MTD at 17-18.  Finally, FIS insists that it, as CPRS's corporate parent, cannot be found vicariously liable for its subsidiary's acts under either statute because Zarichny has failed to allege that FIS dominates CPRS or that CPRS is either an instrumentality of FIS or a sham corporation, but

---

[5] That provision defines "debt collector" to mean

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another…. [T]he term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts….

instead rests its allegations on publicly-available descriptions of FIS's activities and collective references to defendants as a "debt collection enterprise."  Id. at 19-21.

Zarichny counters by relying on cases where courts have found liability under the TCPA when one company "engaged" another to act on its behalf.  Resp. in Opp. at 14-16.  For example, the Ninth Circuit recently held that a marketer may be held liable under the TCPA for contracting with a third-party vendor it instructed to send unsolicited messages, even when the marketer itself made no telephone calls.  Gomez v. Campbell-Ewald Co., 768 F.3d 871 (9th Cir. 2014).  As to her FDCPA claims, Zarichny argues that FIS is a debt collector under the statute because its alleged activities bring it under the statutory definition.  Resp. in Opp. at 17.  Further, she points to court decisions finding liability for "unlawful debt collection activities carried out by another on [a company's] behalf."  Id. (quoting Pollice v. National Tax Funding, L.P., 225 F.3d 379, 404 (3d Cir. 2000)).

We cannot agree with Zarichny.  To begin with, she fails to allege FIS made any phone calls.  Further, she misreads Pollice which relied on federal court decisions applying agency principles to hold a client vicariously liable for its attorney's misconduct when both are debt collectors under the TCPA.  Pollice, 225 F.3d at 405.  Our Court of Appeals held that a "debt collector" who is not holding itself out as such may nonetheless be held liable for the activities of another whom "it enlists to collect debts on its behalf."  Id.  Even assuming Zarichny had sufficiently alleged that FIS is a debt collector, she does not allege that FIS enlisted CPRS to call her or that CPRS acted as FIS's agent in placing those telephone calls.

More to the point, our Court of Appeals has clearly set forth the circumstances under which a parent corporation may be held responsible for its subsidiary's actions, and those circumstances are not present here.  Corporate form, which permits shareholders to invest

without risking personal liability for a corporation's acts, also shields parent corporations from liability arising from ownership of a subsidiary.  See United States v. Bestfoods, 524 U.S. 51, 69 (1998).  Having corporate officers in common is not enough to give rise to parent liability nor will a subsidiary's use of the parent's trade name or its administrative support personnel suffice.  Pearson v. Component Technology Corp., 247 F.3d 471, 484-85 (3d Cir. 2001) (internal citations omitted).  Rather, our Court of Appeals has held that, under federal common law, we may pierce the corporate veil to hold a parent accountable under a limited set of circumstances that require us to look at the following factors:

> gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder.

Pearson, 247 F.3d at 484-85.  The test is meant to be an inquiry into whether the subsidiary's corporate form is "little more than a legal fiction."  Id. at 485.

Zarichny alleges none of these factors.  Indeed, her generalized allegations about FIS's business conduct -- including tax collection; call-center operation; and shared executives with CPRS -- fall far short of the intrusive control our Court of Appeals requires to hold a parent corporation accountable for its subsidiary's actions.  For that reason, we will grant defendants' motion and dismiss FIS from this lawsuit.

B.     Zarichny's TCPA Claims Against CPRS

Defendants argue that plaintiff's TCPA claim against CPRS should be dismissed because the statute prohibits only calls made without the recipient's having given "prior express consent" during the transaction that gave rise to the alleged debt.  MTD at 24; see also 47 U.S.C. §

227(b)(1)(A)(iii).  They point us toward <u>Conklin v. Wells Fargo Bank, N.A.</u>, 2013 WL 6409731

at *3 (M.D.Fla. Dec. 9, 2013), which relies on a Federal Communication Commission ruling

clarifying the TCPA's consent requirement, and observe that Zarichny's complaint is

"conspicuously silent concerning the issue of express consent."  MTD at 25.  They also argue

that Zarichny alleged that CPRS placed only one of the eleven phone calls, and therefore her

action should be dismissed as to the other ten.  <u>Id.</u> at 26-27.

Zarichny contends we should maintain her TCPA claim because her complaint states that

she had "no contact or any interactions with the [d]efendants" before receiving prior the phone

calls, nor any prior business relationship or any other communication with defendants.  Resp. in

Opp. at 21; <u>see also</u> FAC ¶ 82.  Therefore, she argues, she could not have given CPRS her prior

express consent.  She also argues that her complaint -- which describes (800) 873-5869 as the

telephone number from which all calls (including the recorded message) came -- adequately

pleads that CPRS initiated all eleven calls.  Resp. in Opp. at 22.

<u>Conklin</u> is persuasive because it relied on an FCC ruling, <u>In re Rules & Regulations</u>

<u>Implementing Tel. Consumer Prot. Act of 1991, Request of ACA, Int'l for Clarification &</u>

<u>Declaratory Ruling</u>, 23 FCC Rcd. 559, 564-65 (Dec. 28, 2007).  To be sure, the FCC's ruling

warrants less deference than we would give its interpretation of a statute but we nonetheless

recognize the ruling's persuasive, if not controlling, authority.  <u>See</u> <u>Bonneville Intern. Corp. v.</u>

<u>Peters</u>, 347 F.3d 485, 490 (3d Cir. 2003).[6]  But the FCC's ruling does not help the defendants

---

[6] As the Supreme Court explained in <u>Christensen v. Harris County</u>, 529 U.S. 576, 587 (2000),
"Interpretations such as those in opinion letters—like interpretations contained in policy
statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do
not warrant <u>Chevron</u>-style deference."  Rather, courts give such agency pronouncements and
extend <u>Skidmore</u> deference based upon "the thoroughness evident in its consideration, the
validity of its reasoning, its consistency with earlier and later pronouncements, and all those

here.  The FCC did state, as defendants maintain, that "prior consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." <u>In re Rules</u>, 23 FCC Rcd. at 564-65.  But the agency ruling elaborates, "Should a question arise as to whether express consent was provided, the burden will be on the creditor to show it obtained the necessary prior express consent. . . .  Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call." <u>Id.</u> at 565.

Thus, the responsibility for securing prior consent originated with the creditor and transferred to CPRS when it placed the calls to Zarichny.  We find that Zarichny has adequately pled the absence of any prior express consent.

We also find that Zarichny has adequately alleged that CPRS made all eleven phone calls as she identified a single originating telephone number that was also the source of the recorded message on her cell phone that identified CPRS as the caller.  Accordingly, we will deny the defendants' motion as to Zarichny's TCPA claim against CPRS.

C.    <u>Zarichny's FDCPA Claims Against CPRS</u>

Defendants argue that we should dismiss Zarichny's claim against CPRS for violating 15 U.S.C. § 1692c because she has not sufficiently alleged that the calls were placed at a statutorily defined "inconvenient" time.[7]  MTD at 29-30.  They contend that, as plaintiff never

---

factors which give it power to persuade, if lacking power to control." <u>Skidmore v. Swift</u>, 323 U.S. 134, 140 (1944).

[7] In this regard, 15 U.S.C. § 1692c(a)(1) provides that

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt at any

communicated the calls were inconveniently timed, her complaint fails to sufficiently support any purported violation of that statute.

Zarichny maintains we should not dismiss this claim because "throughout the relevant period, [d]efendants were aware that [p]laintiff was a college student and, yet, [d]efendants called her. . . when a college student would be expected to be in class."  Resp. in Opp. at 24.

We set aside, for the moment, the uncontested fact that Zarichny worked as an administrative assistant for lead attorneys Kalikhman & Rayz LLC during this period, rendering dubious her claim that she was "expected to be in class" at the times the calls occurred.  We find persuasive our sister court's conclusion that in "the absence of knowledge of circumstances to the contrary" under this provision, the statute "presumes that any time between the hours of 8:00 a.m. and 9:00 p.m. is a convenient time for communicating with the consumer."  Shand-Pistilli v. Professional Account Services, Inc., 2010 WL 2978029 at *3 (E.D.Pa. July 26, 2010) (O'Neill, J.).  Zarichny concedes that all of the phone calls she received occurred within the statutorily permissible time and offers nothing to support that CPRS was aware of her idiosyncratic circumstances that made those times inconvenient for her.  We will therefore dismiss her claims under this provision.

Defendants also urge that we dismiss her claim that CPRS violated Section 1692d by "[c]ausing a telephone to ring or engaging any person in telephone conversations repeatedly or

---

unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location.

continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5). They rely on Shand-Pistilli and Hoover v. Monarch Recovery Management, Inc., 888 F. Supp. 2d 589 (E.D.Pa. 2012) in support. In Hoover, Judge Gardner found that "[g]enerally, whether conduct harasses, oppresses, or abuses will be a question for the jury. However, the conduct plaintiff alleges must still meet a threshold level in which the facts support a reasonable inference that she has made a plausible claim to relief under § 1692d." Id. at 596 (internal citation and quotation omitted). Zarichny's complaint, defendants contend, makes no such plausible claim.

In her response, Zarichny tries to save her Section 1692d claim by urging us to permit discovery since she avers that CPRS made "at the very least" eleven calls. Resp. in Opp. at 25; see also FAC ¶ 71. Plaintiff's effort to bootstrap those calls (over a six-month period) into a claim that CPRS "repeatedly or continuously" called "with [the] intent to annoy, abuse, or harass" is unavailing. She thus fails to meet the threshold level to support a reasonable inference that she has made a plausible claim. We will therefore dismiss Zarichny's Section 1692d claim.

Next, defendants move to dismiss Zarichny's claim that CPRS made a "false representation of the character, amount, or legal status of [her] debt" in violation of 15 U.S.C. § 1692e(2)(A) and using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," in violation of 15 U.S.C. § 1692e(10). They argue that "the mere fact that [Zarichny] disputes owing a defaulted debt is insufficient to . . .support a proper allegation" that defendants violated this provision. MTD at 34. And they maintain that she has failed to allege any deceptive tactics that may have been employed. Id. at 35.

Zarichny opposes dismissal and argues she has adequately pled this violation by alleging

that CPRS's voicemail was "confusing and misleading in that it suggested that, if [she] would have called [d]efendants she would be acknowledging owing the debt at issue."  Resp. in Opp. at 26.  Defendants' attempts to collect a debt that was never owed, she contends, establishes that they made false or misleading representations.  Id. at 27.

We will dismiss this claim for several reasons.  To begin with, the complaint contains no allegation that the CPRS voicemail was confusing or misleading.  Further, we use the "least sophisticated debtor" to evaluate whether a communication is deceptive and violates the FDCPA. See Campuzano-Burgos v. Midland Credit Mgmt., Inc., 550 F.3d 294, 298 (3d Cir. 2008).  This is a low standard, but nonetheless is meant to protect defendants from "bizarre or idiosyncratic interpretations" of communications.  Lesher v. Law Offices Of Mitchell N. Kay, PC, 650 F.3d 993, 997 (3d Cir. 2011).  Under this standard, a communication is deceptive if "it can be reasonably read to have two or more different meanings, one of which is inaccurate." Campuzano-Burgos, 550 F.3d at 298 (internal citation omitted).  But as we recently observed, "the least sophisticated debtor standard does not provide solace to the willfully blind or non-observant."  Szczurek v. Professional Management, Inc., -- F. Supp. 3d --, 2014 WL 6388484 at * 5 (E.D.Pa. Nov. 17, 2014) (Dalzell, J.)  (quoting Campuzano-Burgos, 550 F.3d at 299).

Here, plaintiff's allegations are devoid of any communications from CPRS that could be reasonably interpreted as anything other than a request that she contact the company about a debt.  The recorded voicemail, which contains the only language Zarichny allegedly received, also specified that if the listener is not Zarichny, "please hang up or call us . . . to remove your phone number."  FAC at ¶ 64.  At no time did CPRS state or intimate that plaintiff's return phone call would constitute acknowledgement that she owed the disputed debt.  We will therefore grant defendants' motion to dismiss Zarichny's Section 1692e claim.

Defendants further urge that we dismiss Zarichny's claim that CPRS's actions violated Section 1692f(1) which prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt," including "[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).  They argue that this claim should be dismissed because Zarichny has failed to allege any amount was collected or that defendant used unconscionable or unfair means. MTD at 36.

Zarichny contends we should not dismiss because "the triggering event for liability under Section 1692f is the mere use of 'unfair or unconscionable' methods."   Resp. in Opp. at 29.

"A complaint fails to state a claim under Section 1692f unless it identifies some misconduct by the debt collector other than that which provides the basis for the plaintiff's claims under other provisions of the FDCPA."  Hoover v. Midland Credit Management, Inc., 2012 WL 1080117 at *8 (E.D.Pa. Mar. 30, 2012).  Apart from her invocation of Section 1692f's provisions, plaintiff fails to identify any type of misconduct to justify maintaining her claim against CPRS.  Accordingly, we will grant defendants' motion as to Section 1692f.

Finally, defendants move to dismiss Zarichny's claim that CPRS violated Section 1692g -- the written notice provision.  They argue that Zarichny has failed to allege any communication that meets the statutory definition -- that is, "convey[s] information regarding a debt directly or indirectly to any person through any medium."  MTD at 37; see also Cole v. Toll, 2007 WL 4105382 at *5 (E.D.Pa. Nov. 16 2007) (Buckwalter, J.) (quoting 15 U.S.C. § 1692a.)

Zarichny responds that for purposes of the FDCPA a "communication" need not demand payment or refer to a debt to be actionable, and "activity undertaken for the general purpose of inducing payment" suffices.  Resp. in Opp. at 30 (quoting McLaughlin v. Phelan Hallinan &

Schmieg, LLP, et al., 756 F.3d 240, 245 (3d Cir. 2014)).  She states that she was first called on June 13, 2013 and heard a pre-recorded message referring to a debt with which she was not familiar, and that she never received any correspondence or written communication from CPRS thereafter -- which she claims establishes a violation of Section 1692g(a).  Id. at 31.  She relies on cases that have held a voicemail from a debt collector need not use the word "debt" to constitute a "communication" under the FDCPA. Id.  See, e.g., Inman v. NCO Financial Systems, Inc., 2009 WL 3415281 (E.D. Pa. Oct. 21, 2009) (adopting the reasoning of Foti v. NCO Financial Systems, Inc., 424 F. Supp. 2d 643, 669 (S.D.N.Y. 2006)).

We find Zarichny's argument persuasive.  Our sister court has held that a telephone message seeking a return call constitutes a "communication" under the FDCPA, even if the amount of alleged debt is not mentioned -- as here.  Inman, 2009 WL 3415281 at *3.  Our Court of Appeals recently found that "activity undertaken for the general purpose of inducing payment constitutes debt collection activity. . . .  Thus, a communication need not contain an explicit demand for payment to constitute debt collection activity.  Indeed, communications that include discussions of the status of payment, offers of alternatives to default, and requests for financial information may be part of a dialogue to facilitate satisfaction of the debt and hence can constitute debt collection activity."  McLaughlin, 756 F.3d at 245.  Even if we disregard the earlier telephone calls, we find that the recorded message left for Zarichny on July 5 was plainly a communication, and CPRS should have sent follow-up written notice within five days as Section 1692g(a) requires.  It did not and we will therefore deny its motion to dismiss as to Section 1692g(a).

Accordingly, Zarichny may proceed with her claims pursuant to the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), and the FDCPA, 15 U.S.C. § 1692g(a).

D.     The Putative Class Claims

We consider now defendants' motion to strike plaintiff's putative class action allegations under both statutes.  Because we will dismiss FIS from this suit, we consider defendants' motion only as to CPRS.

Zarichny seeks to bring two class actions -- the first on behalf of a nationwide class of people "who received one or more telephone calls from [d]efendants to whom [d]efendants did not send a written notice pursuant to 15 U.S.C. § 1692g," the so-called FDCPA class -- and the second on behalf of those people "who received one or more telephone calls from [d]efendants on the individual's cellular telephone that was initiated using an automatic telephone dialing system" without prior content -- the putative TCPA class.  FAC ¶¶ 16, 17.

Defendants contend that plaintiff's class definitions impermissibly define so-called fail-safe classes of plaintiffs.  A fail-safe class is "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim."  Messner v. Northshore University HealthSystem, 669 F.3d 802, 825 (7th Cir. 2012).  Its existence, therefore, cannot be ascertained until the conclusion of the case, when liability is determined.  See Slapikas v. First Am. Title Ins. Co., 250 F.R.D. 232, 250-51 (W.D. Pa. 2008).  Here, Zarichny's TCPA class purports to include only those who did not provide CPRS with "prior consent."  MTD at 10.  As defendants explain,

> If the [p]laintiff successfully demonstrates that the [d]efendant made calls using . . . [a] prerecorded voice to the class members' cell phones without the class members' prior express consent, then the class members win.    However, if the [p]laintiffs are unsuccessful in meeting their burden of proof, the class does not exist and the class is not bound by the judgment in favor of the [d]efendant. This is the definition of a prohibited fail-safe class.

Id. at 11 (quoting Sauter v. CVS Pharmacy, Inc., 2014 WL 1814076 at *9 (S.D.Ohio May 7,

2014)).  Similarly, defendants contend, Zarichny defines her putative FDCPA class as those to whom CPRS failed to send timely written notice under the statute -- a class whose "defining characteristic . . . is FDCPA liability."  Id. at 12.

Zarichny (who has not yet moved for class certification as to either putative class) counters that we should not strike her class allegations because "the class definition can be revised" through the course of the litigation.  Resp. in Opp. at 6.  She argues that our Court of Appeals has held that a ruling on class certification is premature when a plaintiff has filed neither a motion for class certification nor conducted any discovery.  Id. at 7; see also Landsman & Funk PC, 640 F.3d at 93.  She argues that we as yet lack the information to conduct the "rigorous analysis" our Court of Appeals requires to determine whether the prerequisites of Rule 23 are met.  Id.; see also In re Hydrogen Peroxide Antitrust Litigation, 552 F.3d 305, 309 (3d Cir. 2008).

As stated above, we may only grant a motion to strike class action allegations if class treatment on the face of the complaint leaves little doubt they are not viable.  See Landsman & Funk, 640 F.3d at  93 n. 30.  For the reasons we detail below, we will strike plaintiff's class action allegations as to both the TCPA and FDCPA classes.  Because plaintiff's class definitions create impermissible fail-safe classes, we need not consider defendants' second ground for striking her class allegations -- that plaintiff is not an adequate class representative because the lead counsel is her employer.

A fail-safe class is one that defines its members by the plaintiff's liability -- all individuals wronged by the defendant, in the classic formulation.  The class definition requires a determination on the merits before members are identified, creating what the Supreme Court called "one-way intervention," American Pipe & Constr. Co. v. Utah, 414 U.S. 538, 547 (1974).

That is to say, either the class members win or, if the defense prevails, no class exists, and the putative class members, unbound by any judgment, are free to pursue individual claims.  Class actions are generally binding on absent class members, but such a class impermissibly skirts the bar of res judicata.

To be sure, our Court of Appeals has not yet considered the permissibility of fail-safe classes.  Other Circuits that have considered fail-safe classes are split.  Both the Sixth and Seventh Circuit have held that fail-safe classes are precluded from certification.  See Young v. Nationwide Mut. Ins. Co., 693 F.3d 532 (6th Cir. 2012); see also Randleman v. Fid. Nat'l Title Ins. Co., 646 F.3d 347 (6th Cir. 2011); accord Messner, 669 F.3d 802 (7th Cir. 2012).  But the Fifth Circuit in In re Rodriguez, 695 F.3d 360 (5th Cir. 2012), reaffirmed its rejection of a rule against fail-safe classes based on Fifth Circuit precedent.  And the Ninth Circuit has not explicitly precluded fail-safe classes, relying on the same Fifth Circuit precedent.  See Vizcaino v. United States Dist. Court for Western Dist. of Wash., 173 F.3d 713, 722 (9th Cir. 1999) (rejecting the district court's reasoning that it was circular to define a class using a legal conclusion that was essential to an ultimate finding of liability).

Nonetheless, we are guided by our Circuit's law on class-action certification.  A class action must satisfy the four requirements of Rule 23(a) -- "numerosity" of class members; "commonality" to the class of questions of fact or law; "typicality"; and adequacy of the class representative.  Shelton v. Bledsoe, -- F.3d --, 2015 WL 74192 at *3 (3d Cir. Jan. 7, 2015).  But before we may consider class-action requirements, our Court of Appeals obliges us to establish two preliminary criteria.  We must (1) clearly define the perimeter of the class and the claims to be given class treatment pursuant to Rule 23(c)(1)(B), and (2) determine whether the class is objectively ascertainable.  Id.  The term "ascertainable" does not appear in the text of Rule 23.

But an essential prerequisite of a Rule 23 action is that there <u>be</u> a class, and "[c]ourts have generally articulated this 'essential prerequisite' as the implied requirement of 'ascertainability' -- that the members of a class are identifiable at the moment of certification," as Judge McKee explained two weeks ago in <u>Shelton</u>, 2015 WL 74192 at *3.

Our Court of Appeals considered the ascertainability requirement in <u>Marcus v. BMW of North America LLC</u>, 687 F.3d 583 (3d Cir. 2012), where plaintiffs suing BMW over "run-flat" tires sought to constitute a class comprised of those who bought or leased a new or used BMW from a New Jersey dealership and subsequent owners or lessors of such cars who bought from anyone in New Jersey or anywhere in the country, where the car was initially bought or leased in New Jersey. <u>Marcus</u>, 687 F.3d at 592. Our Court of Appeals concluded in <u>Marcus</u> that the proposed class so defined "raise[d] serious ascertainability issues" because BMW could not know which of its cars came equipped with those tires (made by another company), or when or where the tires might have been replaced. <u>Id.</u> at 593-94.

Our Court of Appeals also held in <u>Marcus</u> that "[i]f class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." <u>Id.</u> at 593. The Court further cautioned against approving a method "that would amount to no more than ascertaining by potential class members' say so." <u>Id.</u> at 594. Ascertainability, the Court explained, eliminates administrative burdens that are "incongruous with the efficiencies expected in a class action", protects absent class members by facilitating notice, and protects defendants "by ensuring that those persons who will be bound by the final judgment are clearly identifiable," <u>id.</u> at 593 (internal citations omitted). If such ascertainability is not met based on objective criteria, the class definition must fail.

A similar problem faces us here. As one commentator explained, "[F]ail-safe classes [are]

one category of classes failing to satisfy the ascertainability requirement."  Erin L. Geller, <u>The Fail-Safe Class as an Independent Bar to Class Certification</u>, 81 Fordham L. Rev. 2769, 2782 (April 2013).  Both classes Zarichny defined are fail-safe classes.  The putative TCPA class is comprised of those people who received CPRS telephone calls without the recipient's "prior express consent," 47 U.S.C. § 227(b)(1)(A)(iii).  Since we are at the outset of this litigation, there is no way to provide notice to that putative class without the sort of extensive fact-finding that class actions should avoid.  Similarly, at the conclusion of the litigation, should CPRS prevail against Zarichny, any other putative class recipient would be free to litigate the same claim against CPRS.

Zarichny's putative FDCPA claim requires a finding that CPRS did not send a written notice pursuant to 15 U.S.C. § 1692g, which would impermissibly require us to certify a class solely on potential class members' say so.

Therefore, we will strike Zarichny's class allegations from her lawsuit but permit two of her statutory claims to proceed.

## IV.    Conclusion

As detailed above, we will grant defendants' motion to dismiss defendant FIS and motion to strike the class allegations.  We will also grant their motion to dismiss plaintiff's claim against CPRS pursuant to the FDCPA, 15 U.S.C. §§ 1692c, 1692d, and 1692f, but we will deny their motion to dismiss plaintiff's claim against CPRS pursuant to the TCPA, 47 U.S.C. § 227 <u>et seq.</u>, and her claim against CPRS pursuant to the FDCPA, 15 U.S.C. § 1692g.

An appropriate Order follows.

BY THE COURT:

<u>/S/ STEWART DALZELL, J.</u>

23